**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOAQUIN NEVAREZ, <br> Plaintiff <br><br> v. <br><br> DYNACOM MANAGEMENT, LLC, *et al.*, <br> Defendants | No. 23 CV 5248 <br><br> Judge Jeremy C. Daniel |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Joaquin Nevarez filed a first amended collective action complaint against DynaCom Management, LLC ("DynaCom"), as well as Ali Setork and Mina Setork (the "Individual Defendants" and, together with DynaCom, the "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* ("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105, *et. seq.* ("IMWL"), the Illinois Wage Payment and Collection Act, 820 ILCS 115, *et. seq.* ("IWPCA"), and the Illinois Employment Classification Act, 820 ILCS 185, *et. seq.* ("IECA"). (*See* R. 17 ("FAC").)[1] The Defendants now move to dismiss the first amended complaint in its entirety under Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), and to strike the collective allegations under Federal Rule of Civil Procedure 12(f). For the reasons discussed below, their motion is denied.

---

[1] For CM/ECF filings, the Court cites to the page number(s) set forth in the document's CM/ECF header unless citing to a particular paragraph or other page designation is more appropriate.

## BACKGROUND

The following factual background is taken from the first amended complaint and is accepted as true for purposes of the motion to dismiss. *Demkovich v. St. Andrew the Apostle Par., Calumet City*, 3 F.4th 968, 973 n.2 (7th Cir. 2021).

Defendant DynaCom is a company located in Naperville, Illinois that provides construction and leasing services to commercial businesses. (FAC ¶¶ 48, 68, 165.) The Individual Defendants are DynaCom's owners and managers. (*Id.* ¶¶ 116–117.) As owners and managers, the Individual Defendants are responsible for overseeing the day-to-day operations of the company, including hiring and firing workers, creating workplace policies and procedures, and managing payroll. (*Id.* ¶¶ 119–120, 122–123.)

Nevarez began working for the Defendants in 2016 as a construction and maintenance worker. (*Id.* ¶¶ 53–54, 67; *see also id.* at 6.) Specifically, Nevarez "built and/or maintained" the commercial buildings that the Defendants leased. (*Id.* ¶ 165.) Throughout his employment, Nevarez was classified as an independent contractor rather than an employee. (*Id.* ¶¶ 54–55.) Nevarez alleges that the Defendants intentionally misclassified him, and others similarly situated, as independent contractors to avoid payment of overtime wages. (*Id.* ¶¶ 56–57, 185.) He filed a four-count putative collective action complaint, which he later amended, alleging that the Defendants' misclassification and non-payment of regular and overtime wages violated the FLSA (Count I), as well as state wage and employee-classification laws (Counts II–IV). (*See generally*, FAC.) The Defendants now move to dismiss Nevarez's first amended complaint in its entirety under Rules 12(b)(1), 12(b)(6), and 12(b)(7), and to strike Nevarez's collective allegations under Rule 12(f). (*See generally,* R. 22.)

## LEGAL STANDARD

A Rule 12(b) motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Rule 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chi. Hous. Auth.*, 6 F. Supp. 3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chi. Police Ass'n v. City of Chi.*, 76 F.3d 856, 862 (7th Cir. 1996)). For facial challenges to standing, the Court accepts all material factual allegations as true and construes all reasonable inferences in the plaintiff's favor. *See Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 279 (7th Cir. 2020). This benefit, however, does not carry into the context of a factual challenge; instead, the Court may consider and weigh evidence outside the pleadings to determine whether it has the authority to adjudicate the action. *Id.*

Rule 12(b)(6) motions, on the other hand, test whether the plaintiff has provided "enough factual information to state a claim to relief that is plausible on its face" and has raised a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (citing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)). In deciding a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). Dismissal is proper where "the allegations . . . , however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

Rule 12(b)(7) authorizes dismissal of a lawsuit if a plaintiff has failed to join a necessary and indispensable party as provided under Rule 19 of the Federal Rules of Civil Procedure. *See Line Constr. Benefit Fund v. Asomeo Env't Restoration Indus., LLC*, 20 C 2741, __ F. Supp. 3d __, 2023 WL 5289366, at *2 (N.D. Ill. Aug. 17, 2023). As with Rule 12(b)(6) motions, in evaluating a motion to dismiss under Rule 12(b)(7), the Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See id.*

Finally, Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Whether to strike material under Rule 12(f) is soundly within the court's discretion. *Delta Consulting Grp., Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009) (citing *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 665 (7th Cir. 1992)).

## ANALYSIS

### I. THE DEFENDANTS' RULE 12(B)(1) AND 12(B)(6) MOTION

Because "[s]ubject-matter jurisdiction is the first issue in any case," the Court begins with the Defendants' jurisdictional arguments under 12(b)(1). *Miller v. Sw. Airlines Co.*, 926 F.3d 898, 902 (7th Cir. 2019). The Defendants move to dismiss Nevarez's first amended complaint for lack of standing and, thus, for lack of subject matter jurisdiction under Rule 12(b)(1). (*See* R. 23 at 19–22.) As the plaintiff invoking the Court's jurisdiction, Nevarez bears the burden of establishing the elements of standing, which include: (1) an injury in fact; (2) that is fairly traceable to the

4

challenged conduct; and (3) likely to be redressed by a favorable judicial decision. *Bazile*, 983 F.3d at 278 (citations omitted).

Liability for violations of the FLSA and Illinois wage statutes extends only to "employers." 29 U.S.C. § 207(a); 820 ILCS 105/4a; 820 ILCS 115/3; 820 ILCS 185/10. Thus, "alleged employees" only have standing to sue current or former employers. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016). Accordingly, to survive the Defendants' standing challenge, the first amended complaint must plausibly show that the Defendants were Nevarez's employers. *See Bazile*, 983 F.3d at 278 ("the allegations of fact—though they must be clearly alleged . . . – need only 'plausibly suggest' each element of standing."). The Court addresses the Defendants' Rule 12(b)(1) and Rule 12(b)(6) arguments together because both turn on a single issue: whether Nevarez has adequately alleged that the Defendants were his employers. (*See* R. 23 at 19–22.) Because this is a facial challenge to standing,[2] the same standard applies to the Defendants' 12(b)(1) and 12(b)(6) arguments. *See Bazile*, 983 F.3d at 278; *Silha*, 807 F.3d at 173–74.

## A. FLSA

Though the language of the statute is the starting place for a determination of the Defendants' status, the FLSA's definitions of "employer" and "employee" are not

---

[2] Because the Defendants' argument is predicated on the sufficiency of Nevarez's allegations to establish an employer-employee relationship, such a challenge is facial in nature, not factual. *See, e.g., Piazza v. New Albertsons, LP*, No. 20 C 3187, 2021 WL 365771, at *2–3 (N.D. Ill. Feb. 3, 2021) (reviewing defendants' challenge based on sufficiency of allegations to establish employer-employee relationship as a facial attack to jurisdiction); *Boyce v. SSP Am. MDW, LLC*, No. 19 C 2157, 2019 WL 3554153, at *1–2 (N.D. Ill. July 31, 2019) (same); *Ivery v. RMH Franchise Corp.*, 280 F.Supp.3d 1121, 1126 (N.D. Ill. 2017) (same).

a model of clarity. *See Hollins v. Regency Corp.*, 867 F.3d 830, 834–35 (7th Cir. 2017); *Ivery v. RMH Fran. Corp.,* 280 F. Supp. 3d 1121, 1128 (N.D. Ill. 2017). Under the FLSA, "employee," is defined as "an individual employed by an employer," 28 U.S.C. § 203(e), and "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 28 U.S.C. § 203(d). Given the absence of meaningful definitions, and "consistent with Supreme Court guidance to construe the terms 'employer' and 'employee' broadly, the Seventh Circuit has concluded that courts must examine the economic reality of the working relationship to assess whether an entity is an employer." *Ivery,* 280 F. Supp. 3d at 1127–28 (citing *Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961); *Hollins*, 867 F.3d at 835).

"In examining the 'economic realities' of working relationships, courts must look to 'the totality of circumstances' instead of applying 'formalistic labels or common law concepts of agency.'" *Id.* at 1128 (quoting *Villareal v. El Chile, Inc.*, 776 F. Supp. 2d 778, 785 (N.D. Ill. 2011)). Courts typically look to whether the defendant "(1) had the power to hire and fire the employee, (2) supervised and controlled the employee's work schedule or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records," *id.* (collecting cases); though these are by no means "the *only* relevant factors, or even the most important." *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008) (emphasis in original) (applying FLSA standard to joint-employer claim under the Family and Medical Leave Act).

6

Further, it is well established that two or more employers may jointly employ an individual for purposes of the FLSA. *See Karr v. Strong Detective Agency, Inc.*, *Div. of Kane Servs.*, 787 F.2d 1205, 1207 (7th Cir. 1986); *Ivery*, 280 F. Supp. 3d at 1128 (citing 29 C.F.R. § 791.2(a)) (explaining that the "federal regulations contemplate that entities that share common control over an employee may be deemed 'joint employers' under the FLSA"). Courts apply the economic reality test described above to determine the existence of a joint-employer relationship. *Ivery*, 280 F. Supp. 3d at 1128. While no one factor is dispositive, generally, for a joint-employer relationship to exist, at a minimum, "each alleged employer must exercise control over the working conditions of the employee." *Moldenhauer*, 536 F.3d at 644.

Here, Nevarez alleges that DynaCom and three other nonparty entities, Allen Construction, Naperville Maintenance, and MLand Maintenance, LLC ("MLand") were, at some point in time, his "joint employers." (FAC ¶¶ 60, 64, 94.) According to the first amended complaint, Naperville Maintenance, Allen Construction, and MLand were all entities through which DynaCom hired, supervised, paid, and maintained employment records for its workers. (*Id.* ¶¶ 61, 75, 78, 82, 99, 103.) Nevarez further alleges that the Defendants directed these entities to classify him and other similarly situated workers as independent contractors and to not pay them overtime wages. (*Id.* ¶ 104.) The first amended complaint includes specific examples of non-payment of wages, alleging that, in February 2021, Nevarez worked overtime hours but DynaCom, "via MLand," paid him "straight time" for those hours. (*Id.* ¶¶ 154–55.)

7

The Defendants argue that Nevarez's allegations do not establish a joint-employer relationship because they are conclusory and fail to distinguish the Defendants' alleged role in the employment relationship from that of the other entities named in the first amended complaint. (R. 23 at 20–22.) In support of these arguments, the Defendants cite to other cases in this district that have dismissed FLSA claims where the complaint alleged collective operation or management, as opposed to specific allegations about "who hired [the plaintiff], paid [him], or directly supervised [his] work." *See Ivery*, 280 F. Supp. 3d at 1129; *see also Hughes v. Scarlett's G.P., Inc.*, No. 15 C 5546, 2016 WL 454348, at *3 (N.D. Ill. Feb. 5, 2016).

Unlike those cases, however, the first amended complaint includes specific allegations regarding the level of control that DynaCom exercised over Nevarez's employment, including, that it had the ability to make hiring and firing decisions, set the terms and conditions of his work, including location and duties, and set and approved his work hours and wages. (*See* FAC ¶¶ 69–82.) Such allegations permit the Court to reasonably infer that DynaCom exercised some sort of control over Nevarez's working conditions and, thus, the existence of a joint-employer relationship. *See Roberts v. One Off Hospitality Grp. Ltd.*, No. 21 C 5868, 2022 WL 2463049, at *4 (N.D. Ill. July 6, 2022) (explaining that allegations that defendant had the "power to hire and/or fire [plaintiff]," "supervised and/or controlled her work schedule and conditions of employment," "determined how she was paid," and "maintained employment records," are the types of allegations that permit the court to infer a joint-employe relationship); *Piazza v. New Albertsons, LP*, No. 20 C 3187, 2021 WL 365771, at *5

8

(N.D. Ill. Feb. 3, 2021) (finding allegations that one of the defendants jointly owned the stores where the plaintiff worked and "maintained control, oversight, and direction over" the plaintiff, including with respect to "timekeeping, payroll, and other employment practices" were sufficient to allege joint-employer relationship).

The Defendants further argue that the claims against the Individual Defendants should be dismissed because the first amended complaint "makes allegations against 'the Setorks' and Ali Setork and Mina Setork' without specifying who (which Setork) made decisions, or who actually took any particular actions and on behalf of which entity they were acting at the time." (R. 23 at 22.) The allegations in the first amended complaint, however, more than satisfy the federal rules' requirement that Nevarez provide the Individual Defendants fair notice of a plausible FLSA claim against them. *See Pfefferkorn v. Primesource Health Grp., LLC*, No. 17 C 1223, 2018 WL 828001, at *10 (N.D. Ill. Feb. 12, 2018).

Nevarez alleges that the Individual Defendants, as managers and owners, had day-to-day control over the operations of DynaCom, including the power to hire, fire, and discipline, the payment of wages, the classification of workers, and the enforcement of employment policies, including a wage forfeiture policy. (FAC ¶¶ 117, 119–20.) Nevarez further claims that the Individual Defendants were involved in the decision to classify him as an independent contractor. (*Id*. ¶ 118.) Such allegations are sufficient to plausibly infer that the Individual Defendants exercised control over the alleged wage violations. *See, e.g., Pfefferkorn*, 2018 WL 828001, at *10 (explaining that it is well accepted that "individuals may be liable as employers where they had

'sufficient control' over the 'particular violations' at issue") (citation omitted). Accordingly, Nevarez has plausibly alleged that the Defendants were his employer under the FLSA.

**B.    IMWL**

The Defendants' 12(b)(1) and 12(b)(6) arguments as to the IMWL are similarly unavailing. Like the FLSA, the IMWL defines "employer" expansively to include "any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 ILCS 105/3(c). "The Illinois Administrative code [ ] states that interpretations of the FLSA should provide guidance to parties interpreting the IMWL, and it sets forth a six-factor test . . . that is virtually identical to the FLSA test" to determine an entity's status as an "employer." *Deschepper v. Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 778 (N.D. Ill. 2015) (internal quotation marks and citation omitted). Accordingly, courts have generally interpreted the provisions of the FLSA and IMWL to be coextensive and, thus, have applied the same analysis to both statutes. *Id.*; *see also Ivery,* 280 F. Supp. at 1127 n.2 (collecting cases).

Here, Nevarez's IMWL claim tracks his FLSA claim. The Court's FLSA analysis therefore applies equally to Nevarez's claim under the IMWL. As such, the Court rejects the Defendants' arguments that Nevarez has failed to sufficiently allege an employer-employee relationship for purposes of the IMWL.

### C.    IWPCA

Turning to Nevarez's IWPCA claim, this statute defines the term "employer"

as:

> any individual, partnership, association, corporation, limited liability company, business trust, employment and labor placement agencies where wage payments are made directly or indirectly by the agency or business for work undertaken by employees under hire to a third party pursuant to a contract between the business or agency with the third party, or any person or group of persons acting directly or indirectly in the interest of an employer in relation to an employee, for which one or more persons is gainfully employed.

820 ILCS 115/2. The statute also provides that "any officers of a corporation or agents

of an employer who knowingly permit such employer to violate the provisions of [the

IWPCA] shall be deemed to be the employers of the employees of the corporation."

820 ILCS 115/13. Section 2 thus confirms that "an employer is liable both for its own

violations of the [IWPCA] and for any [IWPCA] violations committed by its agents[,]"

and Section 13, in turn, "imposes personal liability on any officers or agents who

knowingly permitted the [IWPCA] violation." *Andrews v. Kowa Printing Corp.*, 838

N.E.2d 894, 899–900 (Ill. 2005).

Joint employer liability is allowed for purposes of the IWPCA. *Johnson v.

Logistics*, No. 16 C 6776, 2018 WL 1519157, at *10 (N.D. Ill. Mar. 28, 2018) (citing

*Andrews*, 838 N.E.2d at 903–04). "The test for the existence of joint employers is

whether 'two or more employers exert significant control over the same employees—

where from the evidence it can be shown that they share or co-determine those

matters governing essential terms and conditions of employment.'" *Id.* (quoting

11

*Andrews*, 838 N.E.2d at 904). In making this determination, courts look to various factors, including "the role of the defendant in hiring, firing, promotions, demotions, setting wages, work hours, and other terms and conditions of employment, discipline, and actual day-to-day supervision and direction of employees on the job." *Id.* (citing *Andrews*, 838 N.E.2d at 904).

As mentioned above, the first amended complaint points to various factors that DynaCom allegedly controlled with respect to Nevarez's employment—from setting the terms and conditions of his work duties to approving his work schedule and wages. The Individual Defendants are similarly alleged to have exercised control over Nevarez's employment, including enforcing workplace policies and managing payroll. Indeed, Nevarez alleges that that the Individual Defendants twice denied him payment of regular wages notwithstanding their knowledge of his compensation agreement with DynaCom. (FAC ¶¶ 9, 11–13.) Such allegations are sufficient to bring the Defendants within the definition of "employer" under the IWPCA. *See, e.g., Ziccarelli v. Phillips*, No. 12 C 9602, 2013 WL 5387864, at *12 (N.D. Ill. Sept. 25, 2013) (explaining that allegations that individual defendant had decision-making authority and knowingly permitted the alleged IWPCA violations were sufficient to state a claim against him).

Nevertheless, the Defendants argue that Nevarez's IWPCA claim must fail under Rule 12(b)(6) because he has not sufficiently alleged the existence of a contract or agreement regarding compensation. (R. 23 at 23–24.) "The IWPCA provides employees with a cause of action against employers for timely and complete payment

of earned wages." *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568 (7th Cir. 2016) (citing 820 ILCS 115/3). Under the IWPCA, "wage" is defined as "compensation owed an employee by an employer pursuant to an employer contract or agreement between the [two] parties . . . ." 820 ILCS 115/2. Thus, to state a claim under the IWPCA, Nevarez must plausibly allege that he is owed compensation from the Defendants pursuant to an employee agreement. *Enger*, 812 F.3d at 568.

In this case, Nevarez alleges that Defendants made an offer of employment pursuant to which they agreed to a certain rate of pay. (FAC ¶ 6.) Specifically, in January 2021, the Defendants offered to pay Nevarez at a rate of $17.30 per hour. (*Id.* ¶ 7.) Nevarez accepted this offer and, thus, he alleges an agreement was formed. (*Id.*) Notwithstanding this alleged agreement, the Defendants failed to pay Nevarez for the ninety-six hours that he worked during the weeks of March 20, 2021, and March 27, 2021. (*Id.* ¶ 9.) Nevarez further alleges that the Defendants failed to pay him for a period of time during the winter months following an injury that he allegedly sustained on the job. (*Id.* ¶ 13.)

The Defendants argue that allegations such as these, which simply allege an agreement to be paid for all hours worked, are insufficient to plausibly state a claim under the IWPCA. (R. 23 at 23–24.) Notably, however, the cases that the Defendants cite in support of this proposition concern IWPCA claims premised on the failure to pay overtime wages or compensate employees for certain ancillary activities performed outside of work hours. *See Brand v. Comcast Corp.*, No. 12 C 1122, 2013 WL 1499008, at *2–8 (N.D. Ill. Apr. 11, 2013) (failure to pay overtime); *Jaramillo v.*

*Garda, Inc.*, No. 12 C 662, 2012 WL 1378667, at *2 (N.D. Ill. Apr. 20, 2012) (same); *Smith v. C.H. James Rest. Holdings, L.L.C.*, No. 11 C 5545, 2012 WL 255806, at *1–2 (N.D. Ill. Jan. 26, 2012) (same); *see also Brown v. Lululemon Athletica, Inc.*, No. 10 C 5672, 2011 WL 741254, at *2–4 (N.D. Ill. Feb. 24, 2011) (failure to compensate for recreational-type activities, such as taking exercise classes and listening to motivational CDs). The IWPCA claims were dismissed in these cases because there were insufficient factual allegations to support an inference that an agreement existed to compensate the employee for the additional work or activity. *See, e.g., Jaramillo*, 2012 WL 1378667, at *2 ("... to the extent that Plaintiffs have alleged an express or implied employment and wage agreement, the Court concludes that they have not adequately pled that such agreement included the payment of overtime premium wages."); *Brown*, 2011 WL 741254, at *3 ("The inference of an employment agreement between the parties is distinct . . . from an inference that Lululemon agreed to compensate Brown for the time she spend attending a staff meeting, taking one exercise class per week, and listening to a motivational CD.").

Here, by contrast, Nevarez does not seek recovery of overtime or other ancillary wages under the IWPCA, (FAC ¶ 21); rather, he seeks relief for unpaid wages pursuant to an alleged agreement with the Defendants to provide work in exchange for an agreed upon rate of pay. Such allegations give rise to a claim under the IWPCA. *See Enger v. Chi. Carriage Cab Co.*, 77 F. Supp. 3d 712, 715 (N.D. Ill. 2014), *aff'd sub nom. Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565 (7th Cir. 2016) ("The IWPCA allows for a cause of action based on wrongfully held compensation pursuant to a

contract or agreement."); *see also Nat'l Metalcrafters v. McNeil*, 784 F.2d 817, 824 (7th Cir. 1996) ("The only thing the [IWPCA] requires is that the employer honor his contract."); *Jaramillo*, 2012 WL 1378667, at *2 (" . . . the IWPCA [ ] demands that employers pay whatever wages were agreed to."). Further, "Illinois courts have interpreted the term 'agreement' to be broader than a contract and to require only a manifestation of mutual assent." *Enger*, 77 F. Supp. 3d at 716 (citation omitted). As such, Nevarez does not need to plead all of the elements of a contract; he need only plead facts showing mutual assent to an agreement, which he has done. *Id.*; *see also Dobrov v. Hi-Tech Paintless Dent Repair, Inc.*, No. 20 C 314, 2021 WL 1212796, at *5 (N.D. Ill. Mar. 31, 2021) (". . . a plaintiff need only allege that an entity paid a worker according to a demonstrable formula for work done so as to raise an inference that the entity and the worker had an employer agreement that embodied that formula.") (internal quotation marks and citation omitted). Accordingly, the Defendants' motion to dismiss Nevarez's IWPCA claim under Rule 12(b)(6) is denied.

### D. IECA

Finally, the IECA provides that any individual "performing services" for a construction contractor is "deemed to be an employee of the employer." 820 ILCS 185/10(a); *see also Anaya v. DIRECTV, LLC*, No. 14 C 5703, 2015 WL 5896171, at *4 (N.D. Ill. Sept. 23, 2015) (citing *Bartlow v. Costigan*, 13 N.E.3d 1216, 1221 (Ill. 2014)) (explaining that the IECA was enacted to address the practice of misclassifying employees as independent contractors in the construction industry). The Defendants do not challenge DynaCom's status as an employer under this statute. Rather, they

15

argue that Nevarez has failed to "sufficiently allege that he had a contractual relationship with DynaCom for purposes of establishing an [IECA] claim." (R. 23 at 20–21.) The Defendants do not point the Court to any authority requiring that a plaintiff must allege the existence of a contract in order to plausibly state a claim under the IECA. Instead, they cite, presumably by mistake, to a provision of the IWPCA. (*See* R. 23 at 21 (citing 820 ILCS 115/2)). The Court addresses the sufficiency of Nevarez's allegations to state a claim under the IWPCA above. In the absence of relevant authority supporting a challenge to Nevarez's IECA claim, the Court declines to consider the Defendants' argument further. *See Draper v. Martin,* 664 F.3d 1110, 1114 (7th Cir. 2011) (" . . . it is not [the] court's responsibility to research and construct the parties' arguments).

For the reasons above, the Court finds that, at this stage, Nevarez has plausibly alleged an employer-employee relationship and, thus, has standing to pursue his wage-related claims. The allegations in the first amended complaint are also sufficient to reasonably infer that Nevarez had a compensation agreement with the Defendants for purposes of the IWPCA. The Court thus denies the Defendants' motion to dismiss Nevarez's claims under Rules 12(b)(1) and 12(b)(6).

## II.    THE DEFENDANTS' RULE 12(B)(7) MOTION

Next, the Defendants argue that the first amended complaint must be dismissed under Rule 12(b)(7) for failing to join MLand as a necessary and indispensable party under Rule 19. "The purpose of Rule 19 is to 'permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources.'" *Askew v. Sheriff of Cook Cnty.*, 568 F.3d 632,

16

634 (7th Cir. 2009) (quoting *Moore v. Ashland Oil, Inc.*, 901 F.2d 1445, 1447 (7th Cir. 1990)). Rule 19 provides that a party is necessary if: "in that person's absence, the court cannot accord complete relief among existing parties"; or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1).

If an absent party meets the above criteria, "the court must order the person be made a party." Fed. R. Civ. P. 19(a)(2). If the court determines the party should be joined but cannot be for jurisdictional reasons, then the court must determine whether the party is indispensable; that is, "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b); *see also Nor v. Alrashid*, No. 20 C 7470, 2022 WL 815542, at *4 (N.D. Ill. Mar. 17, 2022). "Rule 19(b) spells out factors for the court to consider in making that judgment, with an emphasis on practical measures that will allow either the entire suit or part of it to go forward." *Askew*, 568 F.3d at 635.

Here, the starting point for the Court is whether complete relief may be accorded among the existing parties without joinder of MLand. *See, e.g., Nor*, 2022 WL 815542, at *4. Nevarez seeks damages for his unpaid wages and a declaratory judgment that the Defendants violated the FLSA, the IMWL, and the IWPCA. (FAC at 40–44, 46, 48.) The Defendants argue that this relief cannot be afforded in MLand's

absence given that MLand is alleged to be a joint employer implicated in the alleged violations. (R. 23 at 10–11.) But, if Nevarez is correct about his joint employer theory, "the potential liabilities of Defendants and [MLand] . . . are independent of each other; [Nevarez] may prove that one *or* all entities are liable." *Nor*, 2022 WL 2022 WL 815542, at *5 (emphasis in original); *see also id.* (explaining that "[i]f Company A and Company B are not joined in this action and [the plaintiff] sues either company in a subsequent action, [the plaintiff] would still need to establish Company A and/or Company B's liability independent of her proof of Defendants' liability here."). In other words, as alleged in the first amended complaint, Nevarez's wage claims against the Defendants are conceptually distinct from his potential claims against MLand.

The same reasoning undercuts the Defendants' argument that MLand will be unable to adequately protect its interests if not joined. (R. 23 at 11–13.) As discussed above, the Defendants' and MLand's potential liabilities under a joint employer theory are independent of each other. Thus, Nevarez will have to prove up his case against the Defendants, just as he would against MLand. As previewed by their motion to dismiss, the Defendants dispute Nevarez's claims on the ground that they are not the "employers" allegedly responsible for the wage violations. The Court fails to see why the Defendants would not be able to accomplish this defense without joining MLand. *See Nor*, 2022 WL 815542, at *4–5.

Nevertheless, even if the Court were to conclude that MLand is a necessary party to this action, it does not follow that dismissal is warranted. Here, MLand's

bankruptcy petition precludes its joinder. *See In re MLand Maint., LLC*, No. 23-10924 (Bankr. D. Del.); *see also Gen. Elec. Cap. Corp. v. Sheffield Sys., Inc.*, No. 01 C 6342, 2002 WL 1759823, at *2 (N.D. Ill. July 29, 2002); 11 U.S.C. § 362(a). Dismissal of this case for nonjoinder would leave Nevarez without an adequate remedy, as he would be unable to pursue his FLSA and wage-related claims against either entity. Further, for the reasons above, the Court does not find that the Defendants would be prejudiced by having to proceed with this action without MLand. *See, e.g., Gen. Elec. Cap. Corp.*, 2002 WL 1759823, at *2 (denying Rule 12(b)(7) motion where named defendant could still assert defenses to breach of contract claims in the absence of alleged co-lessee who was precluded from joinder after filing for bankruptcy). Accordingly, the Court does not find that dismissal is warranted under Rule 12(b)(7).

### III.  THE DEFENDANTS' MOTION TO DISMISS FOR UNTIMELINESS

Next, the Defendants argue that the Court should narrow the temporal scope of this litigation to exclude any claims for violations of the FLSA, IMWL, and IECA that accrued prior August 9, 2020, because the limitations period has expired, and Nevarez's allegations are insufficient to warrant equitable tolling. (R. 23 at 13–16.) A complaint, however, "need not anticipate and overcome affirmative defenses, such as the statute of limitations," thus, such defenses are not often resolved on a motion to dismiss. *Amin Ijbara Eq. Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 492 (7th Cir. 2017) (quoting *Cancer Found., Inc. v. Cerberus Cap. Mgmt., LP*, 559 F.3d 671, 674 (7th Cir. 2009)) (internal quotation marks omitted). Dismissal at this early stage is only appropriate where "it is clear from the face of the . . . complaint that [a claim] is hopelessly time-barred." *Cancer Found.*, 559 F.3d at 675.

19

Here, the complaint sufficiently alleges violations of the FLSA, IMWL, and IECA occurring within the three-year limitations period (or, at the very least, does not establish that each statutory violation occurred outside that period). (*See* FAC ¶¶ 7, 9, 54, 154–55.) That is enough for these claims to proceed, as "the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (citation omitted) (explaining that Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims); *see also McInerney v. CareerBuilder, LLC*, No. 18 C 4073, 2019 WL 6497369, at *4 (N.D. Ill. Dec. 3, 2019) (explaining that "winnowing of a claim properly occurs at summary judgment, not at the pleadings stage . . .")*.* Accordingly, the Defendants' motion to dismiss parts of Nevarez's FLSA, IMWL, and IECA claims as time-barred is denied.

## IV. THE DEFENDANTS' MOTION TO STRIKE UNDER RULE 12(F)

Finally, the Defendants contend that the collective allegations raised in the first amended complaint should be stricken under Rule 12(f) or dismissed under Rule 12(b)(6) because class certification is inappropriate. Section 16(b) of the FLSA allows for collective action "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). "The FLSA does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of the district courts." *Jirak v. Abbott Laby's, Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (citing *Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170–72 (1989)). Where, as here, a party seeks to strike or dismiss collective allegations prior to discovery and

full briefing on the conditional certification issue, courts have denied said motions as premature. *See Dietrich v. C.H. Robinson Worldwide, Inc.*, No. 18 C 4871, 2018 WL 6399199, at *1 (N.D. Ill. Dec. 6, 2018) (declining to strike class and collective allegations prior to discovery); *Carrol v. S.C. Johnson & Son, Inc.*, No. 17 C 5828, 2018 WL 1695421, at *5 (N.D. Ill. Mar. 29, 2018) (noting that courts have denied motions to dismiss or strike class allegations prior to full briefing on the plaintiff's motion to certify the class). Further, the Court does not find that Nevarez's collective allegations are so "facially defective" as to warrant having them struck or dismissed at this stage of proceedings. *See Advanced Dermatology v. Fieldwork, Inc.*, 550 F. Supp. 3d 555, 568 (N.D. Ill. 2021) ("A court should strike class allegations at the pleading stage 'only where the pleadings are facially defective or inherently deficient,'. . ."). Accordingly, the Defendants' motion to strike and/or dismiss the collective allegations is denied.

## CONCLUSION

The Defendants' motion to dismiss [22] is denied. The Defendants shall answer the first amended complaint by May 2, 2024. The status hearing set for April 23, 2024, is stricken.

Date: 4/11/2024

_____
JEREMY C. DANIEL
United States District Judge